IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICK NICHOLAS BUSS,

        Petitioner,

v.

JEFF PREMO, Superintendent,
Oregon State Penitentiary,

        Respondent.

Civil No. 6:12-cv-01539-BR

OPINION AND ORDER

THOMAS J. HESTER
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

        Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

        Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court DENIES the Petition for Writ of Habeas Corpus.

## BACKGROUND

On May 26, 2006, a Tillamook County grand jury indicted Petitioner on eight counts of using a child in a display of sexually explicit conduct, seven counts of third degree rape, three counts of third degree sodomy, and one count of furnishing alcohol to a minor. The charges arose from two encounters between Petitioner and his victim, a minor girl whom he met on the Internet in March 2006.

On March 26 and 27, 2006, Petitioner and the victim stayed at a motel in Tillamook County. Over the course of the weekend, Petitioner and the victim engaged in sexual intercourse several times and performed oral sex on each other. Petitioner also photographed the victim in different outfits, including a cheerleading uniform and some lingerie he had purchased for her.

On April 21, 22, and 23, 2006, Petitioner stayed with the victim at her home while her parents were away. During that visit, Petitioner and the victim again engaged in sexual intercourse and performed oral sex on each other. This time,

2 - OPINION AND ORDER -

Petitioner took explicit nude pictures of the victim on each of the three days.

On November 21, 2006, the prosecutor tendered a plea offer that would have required Petitioner to plead guilty to three counts of using a minor in a display of sexually explicit conduct and agree to three consecutive 70-month Ballot Measure 11 sentences, for a total of 210 months of imprisonment. Petitioner rejected the plea offer.

On January 18, 2007, Petitioner entered guilty pleas to all but five counts of the indictment.[1] The plea petition signed by Petitioner indicated that sentencing would be "open." The plea petition stated the presumptive sentence, minimum sentence, and maximum sentence for each count, and stated that the trial court could order the sentences to be served concurrently or consecutively, unless prohibited by Oregon law.

At the plea hearing, the trial judge engaged in a colloquy with Petitioner. The judge established that counsel had reviewed the petition with Petitioner and had answered all of his questions, and also that Petitioner understood the maximum penalties for each conviction. The judge accepted the plea "as having been knowingly and voluntarily made with a factual basis

---

[1] Petitioner did not plead guilty to two of the three counts of Rape in the Third Degree or the three counts of Sodomy in the Third Degree; the state agreed to dismissal of these five counts.

3 - OPINION AND ORDER -

for each," and scheduled a sentencing hearing for April 13, 2007. Resp. Exh. 104, p. 8.

At the scheduled sentencing hearing, a question arose about whether the dates and times provided in reports submitted by the prosecutor were accurate as to when certain photographs were taken. The court and counsel determined that the prosecution would be required to provide defense counsel additional information in the form of "spec sheets," which would include the exact date and time of each digital image. The sentencing was reset to May 25, 2007. When the case was called on May 25, 2007, the state still had not produced the requested data and the case was again continued.

At the sentencing hearing on June 29, 2007, the state recommended a sentence totaling 360 months of imprisonment. The state called Sergeant Tom Nelson from the Deschutes County Sheriff's Office as its first witness. Sergeant Nelson testified about the date and times of the various photographs from March 26-27, 2006, and April 21-23, 2006, based on "EXIF" data embedded in the digital images. He testified that the March images were taken on the night of the 26th, and on both the morning and evening of the 27th. As to the April images, Nelson testified that the EXIF data showed the first image was taken at 10:14 p.m. on April 20, 2006. Then there was an image taken 121 minutes later, at 12:15 a.m. on April 22, 2006. At 2:43 p.m. on the afternoon April 22,

4 - OPINION AND ORDER -

2006, there were several images taken just seconds apart. Finally, Nelson testified that three additional images were taken at 8:58 and 8:59 a.m. on April 23, 2006.

The state also called the lead investigating officer from Tillamook County, Jana McCandless. She testified that in the photos from March 26-27, 2006, the victim was wearing underwear and a t-shirt. McCandless described the April images as coming in three groups, and testified that they were taken in the victim's home. Unlike the March pictures, these images involved "full nudity."

Petitioner's attorney argued Petitioner should receive the mandatory minimum sentence of 70 months of imprisonment on the first count of using a child in a display of sexually explicit conduct, and asked the court to order the rest of the sentences to run concurrently. Trial counsel presented the testimony of Dr. Richard King, a psychologist who performed a psychosexual evaluation of Petitioner. King testified that Petitioner was amenable to treatment and that a lengthy prison sentence would make him more likely to re-offend. Petitioner's mother also testified that the conduct that led to the charges was "shocking" to her, and "out of character" for Petitioner.

The trial judge found Petitioner took photographs of the victim on three separate days in April, and "that there [were] therefore three discrete actions." Resp. Exh. 104, pp. 121-22.

5 - OPINION AND ORDER -

Thus, Petitioner's actions were "not a continuous and uninterrupted course of conduct; that instead there [were] significant breaks of time during . . . which [Petitioner] had a chance to reconsider to not take the next series of photographs." Resp. Exh. 104, p. 121. The judge sentenced Petitioner to consecutive terms of 70 months of imprisonment on each of three counts of using a child in a display of sexually explicit conduct, and a consecutive 30-month term on one count of third-degree rape, for a total of 240 months of incarceration. As to the remaining counts, the trial judge imposed concurrent sentences.

Petitioner filed a direct appeal, raising as his single claim of error that the trial court erred in imposing consecutive sentences. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Buss*, 228 Or. App. 756, 210 P.3d 945, *rev. denied*, 346 Or. 589, 214 P.3d 821 (2009).

Petitioner then filed a petition for state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Buss v. Premo*, 246 Or. App. 82, 262 P.3d 405, *rev. denied*, 351 Or. 507, 272 P.3d 742 (2011).

On August 24, 2012, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court.

6 - OPINION AND ORDER -

Petitioner alleges one ground for relief: "Ineffective Assistance of Trial Counsel (Sixth and Fourteenth Amendments) where trial counsel failed to provide suitable counsel." The Court appointed counsel to represent Petitioner, and in the counseled Brief in Support of Petition for Writ of Habeas Corpus, Petitioner argues trial counsel was ineffective in two respects: (1) advising Petitioner to reject the State's plea offer of 210 months of imprisonment; and (2) failing, until after the plea had already been entered, to obtain data from digital photographs demonstrating when the images were taken. Petitioner argues that had he been properly advised, he would have accepted the 210-month plea offer. Respondent contends the state PCR court's denial of relief on this claim was not contrary to or an unreasonable application of clearly established law and, as such, must be granted deference.

## LEGAL STANDARDS

An application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring

7 - OPINION AND ORDER -

federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-1402 (2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

A state court decision is "contrary to" clearly established federal law if it is "in conflict with," "opposite to," or "diametrically different from" Supreme Court precedent. *Williams*, 529 U.S. at 388. An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 413), *cert. denied*, 126 S.Ct. 484 (2005).

A federal court making an "unreasonable application" inquiry should ask whether the state court's application of federal law was objectively unreasonable. *Williams*, 529 U.S. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (internal citations omitted). Instead, "a habeas court must

8 - OPINION AND ORDER -

determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). The decision of the state PCR trial court is the basis for review in the instant proceeding.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (citations omitted). It is well established that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based upon ineffective assistance of counsel. *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under *Strickland*, a petitioner must prove:
1) counsel's performance fell below an objective standard of reasonableness and, 2) there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

For the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Moreover, "a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S.Ct. at 1407 (quoting *Strickland*) (internal quotation marks omitted). The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Strickland*, 466 U.S. at 690.

"To establish Strickland prejudice a [petitioner] must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S.Ct. at 1384-85 (quoting *Strickland*, 466 U.S. at 694). "In the context of pleas a [petitioner] must show the outcome of the plea process would have been different with competent advice." *Id.* (citing *Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012) (additional citations omitted). In other words, in order to prevail upon a claim that counsel's

10 - OPINION AND ORDER -

ineffective advice led to the rejection of a plea offer, a petitioner must show:

> [T]hat but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

Finally, a doubly deferential standard of review applies to federal habeas review of ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111, 1420 (2009); *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (deference under § 2254 and deference under *Strickland*). Petitioner must prove that there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Premo v. Moore*, 131 S.Ct. 733, 740 (2011); *Harrington*, 131 S.Ct. at 788.

## **DISCUSSION**

Petitioner argues trial counsel was ineffective because when he advised Petitioner to reject the 210-year plea offer, counsel was not aware of the data from the digital photographs establishing the exact date and time they were taken. Those dates and times were deemed by the criminal trial judge to permit three consecutive sentences under Oregon law. Although counsel

11 - OPINION AND ORDER -

ultimately received and told Petitioner about the evidence prior to sentencing, counsel did so only after the plea offer had been rejected and the trial judge had already accepted the open-sentencing plea.

Petitioner testified in the PCR proceedings that he would have accepted the severe 210-month plea offer had he been told that the evidence of when the photographs were taken would permit the judge to find separate incidents, thereby supporting consecutive sentences. Resp. Exh. 113, pp. 9-10. In response, the state proffered an extensive affidavit from Petitioner's trial counsel describing this overwhelming evidence against Petitioner and counsel's discussions with Petitioner about the 210-month plea offer. Although lengthy, Counsel's explanation is enlightening:

> 31. Upon review of the discovery provided, and after consultation with Petitioner, I soon recognized the futility of denying the allegations. Trial on the merits might well have and probably would have resulted in conviction upon all 19 counts. . . .
>
> 32. Therefore, it soon became apparent to counsel and to Petitioner that our goal was to try to minimize the sentence.
>
> 33. Eventually, the plea offer of 210 months was received. Both Petitioner and I regarded the offer as extremely severe, and therefore, untenable. To be clear, Petitioner communicated to me that *acceptance of the state's plea offer was not an option; under no circumstances would Petitioner voluntarily agree to the proposed 17.5 year sentence.* However, despite my numerous attempts to negotiate a more favorable outcome, the prosecutor would not be swayed.

> 34. On the other hand, despite Petitioner's insistence to the contrary, if the plea offer were accepted, and the parties joined in recommending to the sentencing court an agreed-upon sentence, at least the prosecutor would be bound against asking for a more severe sentence. (*Of course, the sentencing court would not have been bound by the agreement of the parties, and agreement or no, the sentencing court could have imposed alternate sentence.*)
>
> 35. In the final analysis, where defending against overwhelming evidence at trial was a poor option, and the plea offer was extremely severe, then the only remaining option was open sentencing upon Petitioner's guilty pleas. However, open sentencing would mean that the sentencing court could (and ultimately did) impose a more severe sentence than the plea offer. So there was risk in open sentencing.
>
> 36. I had long discussions with the Petitioner at the jail to explore the relative merits of these various options and Petitioner understood the possible risks. I recall explaining to Petitioner that the court could, upon making certain findings, impose consecutive sentences for all counts. I further explained that such consecutive sentences might form the basis for an appeal, depending upon whether the court correctly applied certain rules predicate to consecutive sentences. In short, *Petitioner knew that multiple consecutive sentences were a possibility,* and we could not possibly know in advance what the court's decision might be.
>
> * * *
>
> 40. After extensive consultations between myself and Petitioner, Petitioner made a knowing decision to reject the plea offer and proceed instead to open sentencing.

Resp. Exh. 126, pp. 7-9 (emphasis provided).

Trial counsel also addressed the timing of his receipt of the data about the digital photographs and the disclosure of the information to Petitioner; counsel did not dispute that this occurred after Petitioner entered his guilty plea. Counsel also

13 - OPINION AND ORDER -

addressed the ultimate effect of obtaining the digital information:

> 49. . . . [T]he date/time stamp on the photographs was not a significant event or important development. To the contrary, the date/time stamp on the individual photos was merely additional proof of what all parties had known from the beginning -- that Petitioner committed crimes on multiple dates at multiple times.
>
> 50. Petitioner and I (and the state) knew with scientific certainty from the very beginning when (date and time) the various photo episodes occurred. Petitioner's present claim that he lacked knowledge of the multiple dates and times is incorrect. After all, Petitioner was present at the crimes -- he knows when the photography occurred. Furthermore, the victim was also there, and she told the police every detail, as documented in the police reports.
>
> * * *
>
> 53. I do not know whether, prior to June 11, 2007 [when counsel discussed the photo data with Petitioner] Petitioner included in his risk assessment of open sentencing the fact that the state had computer proof of different photo dates. After June 11th, Petitioner certainly knew of this aspect of the state's evidence. But, more importantly, I communicated to Petitioner often and unambiguously that at open sentencing the court could impose consecutive sentences and the result could be worse than the plea offer.
>
> 54. Petitioner's risk assessment did not change, or should not have changed, after I received the date/time stamps. Both he and I knew about the "multiple dates and times" issue from the very beginning. The computer/photograph evidence was simply cumulative of the other evidence that Petitioner had, and that I discussed with him.
>
> 55. The state had overwhelming proof of the multiple dates and times from other evidence, including different settings (i.e., poses and costumes modeled by the victim) and locations depicted in the photographs, and from the complainant's detailed statements. The

14 - OPINION AND ORDER -

> computer/photo or date/time stamp evidence did not make consecutive sentences more likely. Instead, consecutive sentencing was a risk from the beginning.

Resp. Exh. 126, pp. 11-12.

As noted, the PCR trial judge denied relief. The judge found trial counsel's affidavit to be credible, and entered the following pertinent Findings of Fact:

**Findings of Fact**

\* \* \*

2.  Trial counsel explained his reasoning for the decisions he made and the information and advice he provided to Petitioner. Trial counsel's reasoning for his decisions and information and advice he provided to Petitioner was sound and competent.

3.  This court finds trial counsel's affidavit to be credible.

Resp. Exh. 134, p. 3. The PCR judge concluded Petitioner failed to prove facts to satisfy the showing required by *Strickland* and, as such, did not establish he was denied the right to effective assistance of counsel.

The PCR trial judge's decision that counsel was not deficient was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. Trial counsel's advice regarding the risks of an "open sentencing" guilty plea was well within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89.

15 - OPINION AND ORDER -

Trial counsel explained, "from the very beginning," before Petitioner entered his plea and before the digital photo date/time stamp evidence was discovered, that the trial judge had the authority to impose consecutive sentences on the basis that the photo episodes occurred on different dates. Moreover, in addition to trial counsel's affidavit, other evidence in the record supported the PCR trial judge's finding that Petitioner understood the risk of rejecting the 210-month plea offer. Petitioner signed a plea petition which described the presumptive and maximum sentences for each offense, and which also explained that the sentences could be consecutive unless prohibited by Oregon law. Resp. Exh. 103, p. 2. Before the criminal trial judge accepted Petitioner's guilty plea, the judge engaged Petitioner in a colloquy and specifically asked if he understood the potential sentences:

> THE COURT: . . . There's an attachment that -- special sentencing -- Attachment number one, special sentencing provisions. And I just want to make sure that you have read through that and you understand what those provisions are.
>
> PETITIONER: Yes, Your Honor.

Resp. Exh. 104, p. 7.

In addition, although the PCR trial judge did not directly address the issue, Petitioner did not establish that he suffered prejudice. As trial counsel noted in his affidavit, even if Petitioner had accepted the plea offer from the state, "the

16 - OPINION AND ORDER -

sentencing court would not have been bound by the agreement of the parties, and agreement or no, the sentencing court could have imposed alternate sentence." Resp. Exh. 126, p. 8. As such, Petitioner failed to show that, but for the alleged error of counsel, the outcome of the plea process would have been different. *See Lafler*, 132 S.Ct. at 1385 (a petitioner must show that the court would have accepted the terms of the rejected plea offer, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed).

## CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus (#2).

The Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 31st day of July, 2014.

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER -